## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MARYLAND

**CORETTA GILES**                                 *

                                                  *

                    **v.**                        *                    **Civil Case No. WMN-16-369**

                                                  *

**COMMISSIONER, SOCIAL SECURITY**       *

                                                  *

\*\*\*\*\*\*\*\*\*\*\*\*\*

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014-01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 12, 15). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I recommend that the Court deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g).

Ms. Giles filed a claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 4, 2006. (Tr. 48-50, 441-44). She alleged a disability onset date of July 7, 2006. *Id.* Her claims were denied initially and on reconsideration. (Tr. 38-40,

45-46, 446-49, 451-52). A hearing was held on June 19, 2008, before an Administrative Law Judge ("ALJ"). (Tr. 574-600). Following the hearing, the ALJ determined that Ms. Giles was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 18-29). The Appeals Council ("AC") denied Ms. Giles's request for review. (Tr. 6-10). Subsequently, Ms. Giles filed new claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[1] These claims were also denied initially and on reconsideration. (Tr. 682-85, 687-88, 1226-30, 1231-46). A second hearing was held before an ALJ on June 28, 2012.[2] Following that hearing, on September 28, 2012, the ALJ again denied benefits. (Tr. 655-67). Two days later, on September 30, 2012, this Court remanded Ms. Giles's 2008 Social Security case for further evaluation. (Tr. 673-81). Subsequently, on December 4, 2013, the AC issued an order consolidating Ms. Giles's applications for benefits and remanding all of her claims for a new hearing and decision. (Tr. 703-08). A third hearing was held before an ALJ on October 15, 2014. (Tr. 1265-87). Following the hearing, on June 26, 2015, the ALJ determined that Ms. Giles was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 615-38). Finally, the AC denied Ms. Giles's request for review, (Tr. 601-03), so the ALJ's 2015 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. Giles suffered from the severe impairments of "osteoarthritis; left knee patellar maltracking and patellofemoral syndrome; lumbar spine narrowing at L5-S1; Achilles tendonitis; history of pulmonary embolism; menorrhagia; asthma; mood disorder NOS;

---

[1] I note that Ms. Giles's second applications for Disability Insurance Benefits and Supplemental Security Income were not included in the administrative record.

[2] The transcript of Ms. Giles's 2012 hearing before the ALJ also was not included in the administrative record.

and anxiety disorder NOS." (Tr. 621). Despite these impairments, the ALJ determined that Ms. Giles retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk for 6 hours in an 8 hour day; sit for 6 hours in an 8 hour day; occasionally climb stairs and ramps; never climb ladders, ropes, or scaffolds; must avoid hazards such as unprotected heights and dangerous machinery; must avoid concentrated exposure to dust, fumes, gases, odors, and similar irritants, and extremes of temperature; can understand, remember, and carry out simple instructions; and can perform simple, routine, and repetitive tasks, with occasional changes in the work setting and occasional required interaction with the public, supervisors, and coworkers.

(Tr. 625). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Giles could perform jobs existing in significant numbers in the national economy and that, therefore, she was not disabled. (Tr. 637).

Ms. Giles raises three primary arguments on appeal: (1) that the ALJ's holding runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); (2) that the ALJ failed to properly evaluate pertinent evidence proffered by the treating psychiatrists; and (3) that the ALJ failed to properly evaluate Ms. Giles's credibility.[3]  Pl. Mot. 15-27.  I concur that the ALJ's opinion is deficient under *Mascio*, and thus recommend remand to allow compliance with that decision.

Beginning with the successful argument, on March 18, 2015, the United States Court of Appeals for the Fourth Circuit published its opinion in *Mascio*.  There, the Fourth Circuit determined that remand was appropriate for three distinct reasons, one of which is relevant to the analysis of this case.  Specifically, the Fourth Circuit found that the hypothetical the ALJ posed

---

[3] Ms. Giles also argues that the ALJ failed to provide the VE with a sufficient hypothetical. Specifically, Ms. Giles contends that the ALJ's failure to include limitations in concentration, persistence, and pace in the hypothetical to the VE rendered the VE's opinion deficient. Pl. Mot. 25-26. Because the ALJ's analysis of Ms. Giles's issues in concentration, persistence, or pace warrants remand, the ALJ should, on remand, determine whether substantial evidence merits inclusion of a limitation in concentration, persistence, or pace in the hypothetical to the VE. *See Dardozzi v. Colvin*, No. SAG-16-20, 2016 WL 6085883, at *4 (D. Md. Oct. 18, 2016) (citing *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir. 1988)).

to the VE – and the corresponding RFC assessment – did not include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. *Mascio*, 780 F.3d at 637-38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id*. at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id*. Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id*.

This case is partially distinguishable from *Mascio*. The entirety of the step three analysis states:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. The claimant testified she has no problems with attention and concentration. The claimant reported that she finishes what she starts, such as watching a movie or reading. The claimant reported that she follow (sic) written and spoken instructions well. However, on October 18, 2010, the claimant reported that she could pay attention for at least 5 minutes. On exam of December 3, 2010, the claimant was able to repeat 4 words right away and recall 2/3 words after five minutes. The claimant was able to spell "world" forwards and backwards.

(Tr. 623). That analysis does not permit this Court to understand the precise parameters of the difficulties the ALJ believed Ms. Giles to have. According to 20 C.F.R. § 404.1520a(c)(2), the

rating of "moderate difficulties" is supposed to represent the result of application of the following technique:

> We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function.

See also 20 C.F.R. § 416.920a(c)(2). Once the technique has been applied, the ALJ is supposed to include the results in the opinion as follows:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4); see also 20 C.F.R. § 416.920a(e)(4).

As noted above, the ALJ imposed a RFC restriction that Ms. Miles can "understand, remember, and carry out simple instructions; and can perform simple, routine, and repetitive tasks, with occasional changes in the work setting and occasional required interaction with the public, supervisors, and coworkers." (Tr. 625). There is no corresponding restriction for the finding of moderate difficulties in concentration, persistence, or pace, such that it addresses Ms. Giles's ability to sustain work throughout an eight-hour workday. In fact, I am unable to ascertain from the ALJ's decision the reason for the finding of moderate, as opposed to mild or no, limitation in the area of concentration, persistence, or pace. Accordingly, I recommend remand to the Commissioner for further explanation and analysis, consistent with the Fourth Circuit's mandate in *Mascio*.

Second, Ms. Giles contends that the ALJ failed to properly evaluate the medical opinions of the treating psychiatrists, Drs. Itskowitz and Somefun.  Pl. Mot. 15-22.  A treating physician's opinion is given controlling weight when two conditions are met: 1) it is well-supported by medically acceptable clinical laboratory diagnostic techniques; and 2) it is consistent with other substantial evidence in the record.  *See Craig*, 76 F.3d 585 (4th Cir. 1996); *see also* 20 C.F.R. § 404.1527(d)(2).   However, where a treating source's opinion is not supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight.  *Craig*, 76 F.3d at 590.   If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is consistent with the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).  The ALJ must also consider, and is entitled to rely on, opinions from non-treating doctors.  *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

 Contrary to Ms. Giles's assertion, the ALJ properly evaluated the opinions of Drs. Itskowitz and Somefun. Beginning with the former, Dr. Itskowitz opined that Ms. Giles "had marked limitations in activities of daily living and in maintaining concentration, persistence, or pace; had moderate difficulties in maintaining social functioning; had experienced 1-2 episodes of decompensation within an (sic) 12 month period…and would be absent from work more than 4 days per month." (Tr. 277-82, 633). Additionally, Dr. Itskowitz opined that Ms. Giles was "limited in various areas of work-related mental functioning, including [] no ability to deal with work stresses and understand, remember, and carry out complex job instructions," and "poor

ability to use judgment with the public, [and] understand, remember, and carry out detailed and simple but not repetitive instructions[.]" (Tr. 283-84, 633). Moreover, Dr. Itskowitz opined that "[Ms. Giles's] anxiety level, physical impairments, [and] emotional vacillation prevent her from engaging in the normal workday process for any length of time." (Tr. 279). Subsequently, the ALJ assigned "little weight" to Dr. Itskowitz's opinion. (Tr. 633).

The ALJ assigned "little weight" to Dr. Itskowitz's opinion because it was inconsistent with the medical evidence and unsupported by the objective record. *Id*. Specifically, the ALJ found that Dr. Itskowitz's opinion was "not supported by the treatment notes or by the objective findings of the psychological consultative examinations[.]" *Id.* Indeed, the State consultants' determination that Ms. Giles "could perform a range of work at the medium exertional level," belies Dr. Itskowitz's opinion. (Tr. 635). In addition, the ALJ noted that Dr. Itskowitz's opinion regarding Ms. Giles's issues in concentration, persistence, or pace was "simply not supported by the medical evidence of record," and cited Ms. Giles's testimony, as well as a June, 2008, examination noting her "good" attention and concentration, to corroborate her finding. (Tr. 430-40, 624). Moreover, the ALJ noted that Dr. Itskowitz's own GAF finding was consistent with no more than moderate symptoms," and accordingly "does not support the extent of the limitations opined." (Tr. 633). These inconsistencies, in addition to others cited by the ALJ, provide sufficient justification for the ALJ's decision to accord "little" weight to Dr. Itskowitz's opinion.

The ALJ also properly evaluated Dr. Somefun's opinion. Notably, Dr. Somefun opined that Ms. Giles had a "marked limitation in the ability to maintain attention and concentration for extended periods," "mild and some moderate limitations in various areas of work-related mental functioning," and "experienced episodes of deterioration or decompensation in a work or work like setting which would cause her to withdraw from the situation or experience exacerbation of

her symptoms[.]"  (Tr. 634).   Additionally, Dr. Somefun opined that Ms. Giles "was 'fairly overwhelmed' with change; exhibited anxiety and panic attacks when her pain was exacerbated; was capable of low stress jobs with some anxiety symptoms; would have good days and bad days; and would be absent from work more than three times a month."  (Tr. 634, 1085-92). Moreover, Dr. Somefun opined that Ms. Giles had "extreme limitation[s]" in "[u]nderstanding[ing] and remember[ing] detailed instructions," "[c]arry[ing] out detailed instructions," "[s]et[ting] realistic goals or mak[ing] plans independently of others," and "[d]eal[ing] with stress of semiskilled and skilled work."  (Tr. 309).  Subsequently, the ALJ assigned "limited weight" to Dr. Somefun's opinion on Ms. Giles's "mild and moderate limitations," and "no weight" to his opinion on Ms. Giles's "marked limitations or excessive absences." (Tr. 635).

The ALJ assigned "limited weight" and "no weight" to portions of Dr. Somefun's opinion because they were inconsistent with the medical evidence and unsupported by the objective record. (Tr. 634-35).  Regarding Ms. Giles's "mild and moderate limitations," the ALJ noted that Dr. Somefun's opinion was "generally consistent with the findings of the state agency and the [RFC]." (Tr. 635).  In addition, the ALJ noted that the "GAF score of 65 is consistent with mild symptoms, such as those reflected in the treatment notes and the findings of Dr. Taller." *Id.*  However, the ALJ did not credit Dr. Somefun's conclusion that these limitations precluded Ms. Giles from all work, and further found that, regardless, the RFC evaluation adequately limited Ms. Giles's "exposure to workplace stress…from that in her prior semi-skilled employment." *Id.*  Regarding Ms. Giles's "marked limitations and excessive absences," the ALJ found that Dr. Somefun's opinion was "not supported by the evidence." *Id.*  Notably, the ALJ noted that [t]here is no evidence of psychotic symptoms, mood lability or other

symptoms which would preclude work, and no support in the treatment or examining findings to support the conclusion that [Ms. Giles] would be absent from work three days from work (sic) and therefore would be unable to sustain employment." *Id.* Moreover, the ALJ found that, as noted above, "[t]he findings also do not support a marked limitation in maintaining concentration for extended periods." *Id.* Furthermore, the ALJ cited the State agency psychological consultants' determination that "[Ms. Giles] retained the capacity to perform work-related tasks from a mental health perspective," to corroborate her findings. (Tr. 636). Accordingly, the ALJ properly evaluated Dr. Somefun's opinion and supported her conclusion with substantial evidence. Therefore, remand on this basis is unwarranted.

Finally, Ms. Giles argues that the ALJ failed to properly evaluate her credibility. Specifically, she believes that the "ALJ's credibility determination lacks the support of substantial evidence." Pl. Mot. 23. "In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians…and any other relevant evidence in the case record." SSR 96-7P, 1996 WL 374186, at *1 (S.S.A. July 2, 1996).

Contrary to Ms. Giles's assertion, the ALJ properly evaluated her credibility. Notably, the ALJ found that "[Ms. Giles's] allegations of disability are unsupported." (Tr. 630). Specifically, the ALJ noted that "[a] review of the medical records reveals that [Ms. Giles's] symptoms are disproportionate to the objective and clinical findings." (Tr. 626). For example, the ALJ noted that "[a]lthough [Ms. Giles] has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature." (Tr. 630). In addition, the ALJ noted that "[Ms. Giles] was not hospitalized for any extended period

of time," "has not undergone any surgery on her left knee or back, nor has any treating or examining source recommended surgical intervention on [her] back." *Id.* Moreover, the ALJ noted that the record showed that "[Ms. Giles] was stable and responded well to her psychotropic medications," (Tr. 636), and cited consistent treatment notes throughout the period at issue denoting Ms. Giles's mental health stability, (Tr. 631). Furthermore, the ALJ noted that Ms. Giles's daily activities, such as "car[ing] for her personal needs," (Tr. 623), "[taking] care of her children," *id.*, "prepar[ing] meals," *id.*, and "iron[ing] and pick[ing] up trash," *id.*, "[were] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," (Tr. 632). Indeed, the ALJ found that "[t]hese essentially normal activities of daily living suggest a higher level of functioning than that alleged by [Ms. Giles]." (Tr. 632). Accordingly, the ALJ concluded that "[Ms. Giles] is only partially credible, and accord[ed] her statements and reports little weight." (Tr. 630).

Ultimately, the ALJ's detailed evaluation of the record evidence against Ms. Giles's statements regarding her physical and mental symptoms amply supports the ALJ's conclusion that Ms. Giles's alleged limitations were not entirely credible. Thus, contrary to Ms. Giles's argument, the ALJ properly evaluated Ms. Giles's credibility, and supported her findings with substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment [ECF No. 15];

2. the Court DENY Plaintiff's Motion for Summary Judgment [ECF No. 12];

3. the Court REVERSE IN PART due to inadequate analysis the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g);

4. the Court REMAND this case for further proceedings in accordance with this opinion; and

5. the Court close this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.


Dated:  December 16, 2016                                    _____/s/_____
                                                            Stephanie A. Gallagher
                                                            United States Magistrate Judge